## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES OWENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.   3:15-cv-01143-MJR-SCW** |
| | ) | |
| **STEPHEN DUNCAN, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**WILLIAMS, Magistrate Judge:**

### INTRODUCTION

*Pro se* Plaintiff James Owens, an inmate at Lawrence Correctional Center, brought this cause of action on October 15, 2015, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.   At threshold review, pursuant to 28 U.S.C. § 1915A, the Court found Plaintiff had articulated five counts against the various named defendants. (Doc. 6).   However, only some of these counts survived the Court's threshold screening, and only one of the two counts aimed at Defendant Dr. Litherland survived.   (Doc. 6). In the surviving count against Defendant Litherland, the Court found that Plaintiff alleged violations of his Eighth Amendment rights when Dr. Litherland injured Plaintiff's lower jaw during an operation, and when Dr. Litherland failed to issue Plaintiff pain medication at relevant times.   (Doc. 6).

On February 29, 2016, Defendant Litherland filed a Motion for Summary

Judgment on the grounds that Plaintiff failed to exhaust his administrative remedies prior to filing suit.   (Doc. 23).   Plaintiff filed his Response on March 9, 2016, (Doc. 27), and Defendant Litherland filed a reply brief on March 11, 2016. (Doc. 28).   On July 1, 2016, the undersigned held an evidentiary hearing pursuant to *Pavey v. Conley*, **544 F.3d 739(7th Cir. 2008)**.   Defendant Litherland's motion is now ripe for disposition.   For the reasons stated below, the undersigned **RECOMMENDS** the Court **GRANT** Defendant Litherland's Motion for Summary Judgment.

FINDINGS OF FACT

As part of his Complaint, Plaintiff provided two grievances, numbered 1509 and 1517.   (*See* Docs. 5, 7).   Plaintiff filled out the first grievance, 1509, regarding pain medication for a bone shard in his lower right gum on June 11, 2015 (hereinafter, "Grievance 1509").   (Doc. 7, p. 1).   In it, Plaintiff asserted that a sick call to obtain pain medication was refused, and that he was otherwise repeatedly unable to obtain medication for the bone shard.   (*Id*.).   Though Plaintiff referenced "the dentist" in Grievance 1509, he told Defendant Litherland that the grievance was not directed toward him, but rather was directed to the sick call personnel.   (Doc. 1, p. 5; Doc. 7, p. 4).

Plaintiff received a response to Grievance 1509 from his counselor on June 23, 2015, and on August 24, 2015, the Grievance Officer recommended the grievance be denied.   (Doc. 7, p. 1-2). The CAO concurred on September 2, 2015, and Plaintiff appealed to the ARB on September 4, 2015 (*Id*. at p. 2).   Defendant Litherland asserts that, at the time his motion was filed, the ARB had yet to respond to Plaintiff's appeal of

Grievance 1509, (Doc. 24, p. 3; Doc. 24-1), and Plaintiff has not demonstrated otherwise.

On August 21, 2015, Plaintiff completed a second grievance also relating to the bone spur in his mouth and pain meds (hereinafter, "Grievance 1517").   (Doc. 7, p. 3).   In Grievance 1517, Plaintiff again complained of a failure to obtain pain medication.   (*Id.* at p. 4).   He also alleged that on June 18, 2016, "the dentist" dug in Plaintiff's jaw bone with a dental probe causing a "slit" in Plaintiff's gum that exposed the jaw bone.   (*Id.*).   He claimed the dentist performed this act in retaliation for Plaintiff filing Grievance 1509.   (*Id.*).   Plaintiff claims "the dentist" refers to Dr. Litherland, which appears to be conceded by Defendant Litherland.   (Doc. 27, p. 2; Doc. 24, p. 3).   The June 18th incident is the only allegation made against Dr. Litherland in Grievance 1517, as there are no other specific complaints regarding Litherland or "the dentist".   (Doc. 7, p. 3-4).   Plaintiff claims this wound to his gum did not heal until July 14, 2015.   (*Id.* at p. 3).

For purposes of this motion, the undersigned finds that Menard was on lockdown from August 10 to August 17, 2015.   (Doc. 27, p. 7).   Plaintiff claims he was unable to file Grievance 1517 until August 21 due to the lockdown.   (*Id.* at p. 3).   He claims he could not obtain grievances during the lockdown, as there were no grievances in the housing units. (*Id.*).   At the evidentiary hearing, Plaintiff claimed he sent requests for grievances to the law library on August 7, 11, and 14 of 2015, but did not receive any. Around the same time, Plaintiff sent a grievance regarding his inability to obtain legal copies from the law library.   (Doc. 43, p. 2).   He had also previously filled out grievances regarding the lack of grievances in the cell house and his inability to obtain

them from correctional officers.   (*Id.* at p. 5 – 7).

Additionally, at the evidentiary hearing, the Court also heard testimony from Plaintiff's current counselor, Defendant Strubhart.   In August 2015, Defendant Strubhart was the grievance officer at Menard.   He testified that, in addition to the law library, grievances are also kept in the counselors' offices, and that such grievances would be available to an inmate during lockdown, as long as the inmate asked for one. However, during the hearing, in the following exchange, Plaintiff admitted that in August 2015 he never asked his counselor for a grievance:

> THE COURT:      Okay.   Mr. Owens, did you ask your counselor for a grievance form?
>
> MR. OWENS:      I sent kites to the law library because that's normally where I get them.   My counselor was a defendant in a case, so I really don't get much of anything from my counselor, Mr. Strubhart is my counselor now.
>
> THE COURT:      Right but we're talking about last – he was the grievance officer at the time.   Was he your counselor at the time also?
>
> MR. OWENS:      No but the counselor that I had at that point is a defendant in one of my cases.
>
> …
>
> THE COURT:      Did you ask for – so you didn't ask for a grievance from your counselor?
>
> MR. OWENS:      I didn't ask him.   I asked the CO's and they wouldn't get me any.   As far as I know, a counselor's never given me a grievance form.   I've never received a grievance form from a counselor in the 16 years I've been in IDOC.
>
> THE COURT:      You didn't ask your counselor?

> MR. OWENS:        I did not ask him because I didn't even know
> they even had them.

As documented in Plaintiff's Cumulative Counseling Summary, which was offered as an exhibit to their Memorandum in Support at the hearing, on at least six occasions during his incarceration with IDOC, Plaintiff has been given grievance forms by a counselor.  (Doc. 46, p. 6, 8, 9, 10).  According to the summary, Plaintiff did not request grievance forms from his counselor in August 2015.   (*Id.* at p. 1).

Plaintiff submitted Grievance 1517 on an emergency basis to the CAO on August 21, 2015, and it was sent back as not an emergency on August 26, 2015.   (Doc. 7, p. 3). Shortly thereafter, Plaintiff appealed this grievance to the ARB, and it was returned by the ARB, along with other grievances, on September 14, 2015 (*Id*. at p. 6).   In returning the grievance, the ARB indicated copies of responses by Plaintiff's counselor and the Grievance Officer were necessary.   (*Id.*).

**LEGAL STANDARDS**

### 1. Summary Judgment Standard

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  ***Dynegy Mktg. & Trade v. Multiut Corp.,* 648 F.3d 506, 517 (7th Cir. 2011) (citing Fed. R. Civ. P. 56(a)).**   The party seeking summary judgment bears the initial burden of demonstrating—based on the pleadings, affidavits and/or information obtained via discovery—the lack of any genuine issue of material

fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** In determining whether a genuine issue of material fact exists, the Court must view the record in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 255 (1986).**

A Motion for Summary Judgment filed pursuant to *Pavey* typically requires a hearing to determine any contested issues regarding exhaustion and a judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Pavey*, **544 F.3d at 742.** While generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but to determine whether a general issue of triable fact exists, a different standard applies to summary judgment on the issue of exhaustion. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**. In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** In this instance, since the undersigned found debatable factual issues, an evidentiary hearing was held.

### 2. PLRA's Exhaustion Requirement

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the Prison Litigation Reform Act's (PLRA's) exhaustion requirement, which in

turn depends on the prison grievance procedures set forth in Illinois law.   *See Jones v.*
*Bock*, **549 U.S. 199, 218 (2007).**

The Prisoner Litigation Reform Act ("PLRA") provides that "no action shall be
brought [under federal law] with respect to prison conditions…by a prisoner…until
such administrative remedies as are available are exhausted."   **42 U.S.C. § 1997e(a)**.
Under the PLRA, exhaustion of administrative remedies is mandatory and unexhausted
claims cannot be brought in court.   *Jones v. Bock*, **549 U.S. 199, 211 (2007).**   The case
may proceed on the merits only after any contested issue of exhaustion is resolved by the
court.   *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).**

The Seventh Circuit takes a strict compliance approach to exhaustion; requiring
inmates follow all grievance rules established by the correctional authority.   *Dole v.*
*Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).**   A prisoner must therefore "file complaints
and appeals in the place, and at the time, the prison's rules require."   *Pozo v.*
*McCaughtry*, **268 F.3d 1022, 1025 (7th Cir. 2002).**   But the PLRA's plain language makes
clear that an inmate is required to exhaust only those administrative remedies that are
available to him.   **42 U.S.C. § 1997e(a).**   However, if the prisoner fails to follow the
proper procedure, the grievance will not be considered exhausted.   *Pavey v. Conley*,
**663 F.3d 899, 903 (7th Cir. 2011).** The purpose of exhaustion is to give prison officials an
opportunity to address the inmate's claims internally, prior to federal litigation.   *Kaba*
*v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted.   *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   Rather, a prisoner must wait to bring a suit until after he completes the exhaustion process.   *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**.   A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit.   *Id.*

### 3.   Exhaustion Requirement under Illinois Law

The Illinois Department of Corrections' (IDOC's) process for exhausting administrative remedies is laid out in the Illinois Department of Corrections Grievance Procedures for Offenders.   **20 Ill. Admin. Code § 504.810.**   If unable to resolve dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute.   *Id.*   The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible."   *Id.*   The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO).   **20 Ill. Adm. Code § 504.830(d)**.   The prisoner will then have the opportunity to review the CAO's response.   *Id.*   If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review

Board ("ARB") within 30 days of the CAO's decision.   **20 Ill. Adm. Code § 504.850**.
Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner
may request his grievance handled on an emergency basis by forwarding the grievance
directly to the CAO.   **20 Ill. Adm. Code § 504.840**.   The grievance may be handled on
an emergency basis if the CAO determines that there exists a substantial risk of
imminent personal injury or other serious or irreparable harm to the offender.   ***Id.***   The
request to have a grievance handled on an emergency basis may also be appealed to the
ARB.   **20 Ill. Adm. Code § 504.850**.

ANALYSIS

I.   <u>Grievance 1509</u>

Defendant Litherland asserts that Grievance 1509 cannot exhaust Plaintiff's
administrative remedies since it was not directed to and does not complain of conduct
regarding Dr. Litherland.   Defendant also claims that the ARB had not responded to
Plaintiff prior to the time he filed suit.

Even when viewing it in a light most favorable to Plaintiff, the record clearly
demonstrates that Grievance 1509 was not directed toward Dr. Litherland.   Dr.
Litherland is not mentioned by name in the Grievance, and Plaintiff only mentioned "the
dentist" in referring to the fact that was informed the dentist would be on vacation until
the following week.   In fact, on more than one occasion Plaintiff specifically indicated
that Grievance 1509 was not directed to Dr. Litherland.   In his Complaint, Plaintiff

states that he told Dr. Litherland this Grievance was not directed toward him, but, rather, was directed toward the sick call staff.   Plaintiff also indicated in Grievance 1517 that he made this very same statement to Dr. Litherland.

In addition, Defendant Litherland asserts that the ARB had not responded to Grievance 1509 by the time Plaintiff brought suit, and he provides an IGRV report in support.   Regardless of whether the ARB subsequently ruled on this grievance, the Seventh Circuit has made clear that if a prisoner does not exhaust his administrative remedies prior to bringing suit, his action must be dismissed.   *See Ford v. Johnson*, **362 F. 3d 395 (7th Cir. 2004) (Where prisoner mailed Complaint, thus bringing suit, prior to a determination of his grievance by the ARB, dismissal of suit was appropriate even though ARB subsequently ruled on the merits of prisoner's grievance.;** *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532 (7th Cir. 1999) (Dismissal was warranted where prisoner failed to exhaust administrative remedies prior to filing suit, even though he exhausted after filing.).**

In his Reply, Plaintiff does not address this purported uncontroverted fact by Defendant Litherland; nor does he address whether Grievance 1509 was directed toward Dr. Litherland.   Therefore, the Court may consider these facts undisputed for purposes of the Motion.   **Fed.R.Civ.P. 56(e)**.   The undersigned finds that Grievance 1509 was not directed toward Defendant Litherland and that Plaintiff had not received a response from the ARB by the time he filed suit.   Therefore, Grievance 1509 cannot exhaust Plaintiff's administrative remedies as required by the PLRA.

II.   <u>Grievance 1517</u>

Defendant Litherland puts forth two arguments in claiming that Grievance 1517, the August 21, 2015 grievance, cannot exhaust Plaintiff's administrative remedies: (1) That Plaintiff has not exhausted because the denial of Plaintiff's grievance by the ARB was on procedural grounds rather than on the merits of the grievance; and (2) The grievance was untimely.   The undersigned addresses each of these arguments in turn.

a) *Exhaustion of Emergency Grievance Procedures*

The ARB returned Grievance 1517 to Plaintiff, stating that copies of responses from Plaintiff's counselor and Grievance Officer were necessary.   As Plaintiff filed this grievance on an emergency basis directly with the CAO, this statement from the ARB effectively instructed Plaintiff to start the grievance process anew using the ordinary three-step procedure.   Based on this instruction to Plaintiff by the ARB, Defendant Litherland contends that because the ARB's response to the emergency grievance was not on the merits, the grievance was therefore not exhausted.   He points out that Plaintiff's grievance was denied on procedural grounds and argues that Plaintiff failed to comply with the Illinois Administrative Code in filing his grievance.   However, this assertion by Defendant is contrary to the text of the code.

The PLRA requires a prisoner to exhaust only those administrative remedies that are available to him.   **42 U.S.C. § 1997e(a);** *Ross v. Blake*, **No. 15-339, slip op. at 4 (U.S. June 6, 2016)**.   "The contours of the exhaustion requirement are set by the prison grievance system in each state."   *Jones v. Bock*, **549 U.S. 199, 218 127 S.Ct. 910, 166**

**L.Ed.2d 798 (2007)**.   Aside from the typical three-step grievance process, the Illinois Administrative Code allows a prisoner to file an emergency grievance directly with the CAO.   **Ill. Adm. Code § 504.840**.   Though the code section pertaining to emergency grievances is silent as to what procedures should be followed if the CAO determines that an emergency is not substantiated, the following section provides:

> In those instances where an offender is appealing a grievance determined by the Chief Administrative Officer to be of an emergency nature, the Administrative Review Board shall expedite processing of the grievance.

**Ill. Adm. Code § 504.850**.   Therefore, in reading the administrative code's grievance scheme as a whole, it is certainly a reasonable interpretation of the code that a prisoner may appeal a CAO's finding regarding an emergency grievance by making a direct appeal to the ARB.   Nowhere in the code does it suggest that a prisoner must re-grieve through the normal three-step process after a determination of a non-emergency by the CAO before (or, for that matter, after) appealing to the ARB.

In *Thornton v. Snyder*, in examining IDOC's grievance procedures, the Seventh Circuit found that "[t]here is nothing in the current regulatory text…that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."   **428 F.3d 690, 694 (7th Cir. 2005)**.   Further, the Seventh Circuit's opinion in *Glick v. Walker* is instructive in this matter.   In that case, Glick, the inmate-plaintiff, filed an emergency grievance directly with the warden, which the warden concluded was not an emergency.   **385 Fed.Appx. 579, 583 (7th Cir. 2010)**.   Glick appealed the warden's decision directly with the ARB, which concurred.   ***Id.***

The ARB told Glick to start over by submitting his grievance to the grievance officer. *Id.* However, prior to learning about the ARB's ruling, Glick was transferred to another facility. *Id.* The defendants argued that Glick never properly submitted his grievance to the ARB; however, the Seventh Circuit disagreed. *Id.* As far as the court could tell in its interpretation of IDOC procedures

> Glick did everything he was asked to do by the ARB, but, as far as §
> 1997e(a) is concerned, one pass to the ARB was enough. The defendants'
> position that he was required to go back to the grievance officer and start
> over after his emergency grievance had been rejected by the warden and
> the ARB is at odds with 20 Ill.Admin Code § 504.840 and *Thornton v.*
> *Snyder*….

*Id.* The Court stated that the defendants could not use the PLRA's exhaustion requirement to force an inmate to do more than what the administrative rules require. *Id.* Here, requiring Plaintiff to re-grieve through the normal three-step procedure after having his emergency grievance found not to be a non-emergency by both the CAO and ARB, would be to impose upon Plaintiff an additional requirement not found in the Code's grievance procedures.

In support of his argument, Defendant cites to the Seventh Circuit's opinion in *Edmondson v. McCaughtry*, **157 Fed.Appx. 908 (7th Cir. 2005)**. However, the *Edmondson* court was interpreting Wisconsin's regulatory scheme regarding prison grievances, which is separate from Illinois's scheme. **157 Fed.Appx. at 909**. There, the Court merely reaffirmed the rule that a grievance that is rejected due to untimeliness does not satisfy the PLRA's exhaustion requirement, and it found that the Wisconsin Administrative Code does not create a right for a prisoner to substitute an informal

exhaustion procedure over the codified formal procedure. *Id.* **at 911-10**. *Edmondson* does not discuss emergency grievance procedures, and it certainly does not discuss any aspect of Illinois' grievance procedures.

In sum, the Illinois Administrative Code is silent as to what is the proper procedure for a prisoner, such as Plaintiff, whose grievance sent on an emergency basis has been found to be a non-emergency from the CAO and ARB. As indicated by the Seventh Circuit, there is no requirement in the regulatory scheme that a prisoner re-start the three-step grievance process once his emergency grievance has been determined to be a non-emergency by both the CAO and ARB. Plaintiff is required only to exhaust the remedies provided for by the Illinois Administrative Code and nothing more. Therefore, the fact that Plaintiff filed suit after receiving a response from the ARB to Grievance 1517 instructing him to effectively start-over using the three-step process, without going back to engage in the regular three-step grievance process, did not preclude Plaintiff from exhausting.

b) *Timeliness*

However, Defendant Litherland also argues that since the conduct complained of was grieved in Grievance 1517 more than 60 days after Plaintiff alleged it occurred, the grievance is untimely under Illinois law. In opposition, Plaintiff claims he was unable to file this grievance until August 21, 2015 due to the lockdown because he could not get grievances from the correctional officers or from the law library.

The Seventh Circuit has held that "[t]o exhaust remedies, a prisoner must file

complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo*, 286 F.3d at 1025. In Illinois, a prisoner has 60 days after the discovery of the problem to file a grievance. **Ill. Adm. Code § 504.810(a)**. However, an untimely grievance will be considered if the prisoner can demonstrate good cause for failure to timely file. *Id.*

Again, a prisoner is only required to exhaust "available" remedies. *Woodford*, **548 U.S. at 102**. The undersigned is mindful that the availability to exhaust the requisite remedies can be thwarted by the actions of prison officials. *See, e.g. Ducey v. Flagg*, **No. 08‒cv‒0691‒MJR, 2009 WL 3065045, at \*4 (S.D. Ill. Sept 21, 2009) ("Prison officials can easily thwart an inmate's attempt to exhaust administrative remedies simply by failing to respond to his or her grievances.")**. When determining whether a remedy is available, the Court will look to whether "the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, **310 Fed.Appx. 10, 13 (7th Cir. 2009) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006))**. This Court has previously held that the grievance process is unavailable when a prisoner takes "reasonable steps to avail himself of" the grievance process, yet the grievance is untimely due to actions by prison officials. *Murphy v. Smith*, **No. 12‒CV‒841‒MJR‒SCW, 2013 WL 5312721, at \*2 (S.D. Ill. Sept. 20, 2013)**.

The undersigned finds that the grievance process was available to Plaintiff and that the untimeliness of Grievance 1517, as to the complaints against Dr. Litherland, is not excusable. The only complaint in Grievance 1517 relating to Dr. Litherland is in

regards to the June 18, 2015 incident; however, the Grievance was filed more than 60 days later on August 21, 2015.   While Plaintiff claims he was unable to obtain grievances while on the August 10 – August 17 lockdown because he could not get them in the cell house or from the law library, Plaintiff admittedly did not ask his counselor for a grievance during that time.   The undersigned finds credible Defendant Strubhart's testimony that grievances would have been available to Plaintiff during the lockdown if he had sought them from his counselor.   Plaintiff did not do so, however.

This Court, with Judge Reagan presiding, has previously found the grievance process unavailable in an instance where a prisoner's grievance was untimely due to prison officials' actions, and where the prisoner had taken "reasonable steps" to ensure its timely filing.  *See Murphy*, **No. 12—CV—841—MJR—SCW, 2013 WL 5312721 (Where prisoner had taken "reasonable steps" to avail himself of the grievance process by giving a grievance to a nurse, who said she would file it, while he was recovering in the health care unit, prisoner was prevented from exhausting his administrative remedies when grievance was not timely filed).**  However, in this instance, by failing to request grievances from his counselor during lockdown, the undersigned finds that Plaintiff did not take all reasonable steps to avail himself of the grievance process.   Therefore, the grievance process was not unavailable to him during the August 2015 lockdown.

Further, the undersigned finds Plaintiff's claims that he did not know he could obtain grievances from his counselor to be lacking in credibility.   Rather, the record

evidence suggests Plaintiff did know he could obtain grievances from a counselor.   The Cumulative Counseling Summary, provided by the Defendants at the evidentiary hearing, demonstrates that on at least six occasions during Plaintiff's incarceration with IDOC, he requested and/or received grievances from a counselor.   Therefore, at the very least, the counseling summary demonstrates Plaintiff should have known he could obtain grievances from a counselor.   However, the undersigned finds it more likely that Plaintiff did in fact have actual knowledge that he could obtain grievances from his counselor, and finds Plaintiff's statements made at the hearing on this matter borderline perjurious.   Plaintiff testified under oath: "As far as I know, a counselor's never given me a grievance form.   *I've never received a grievance form from a counselor in the 16 years I've been in the IDOC.*" (Emphasis added).   The undersigned reminds the Plaintiff of the serious nature and potential consequences of perjury.   *See* **18 U.S.C. §§ 1621, 1623 (Criminalizing perjury);** *Rivera v. Drake,* **767 F.3d 685, 686 (7th Cir. 2014) (dismissing a lawsuit as a sanction where an inmate submitted a false affidavit and subsequently lied on the stand)**.

Finally, in his Response, Plaintiff argues that Grievance 1517 was not untimely because he did not have notice of a cognizable grievance against Defendant Litherland until June 26, 2015.   (Doc. 27, p. 3).   This argument is unpersuasive, however.   Plaintiff claims that he saw Dr. Litherland on June 26th, showed him the gaping wound in his gum, and that the Defendant failed to correct the gum injury or provide Plaintiff with pain medication.   (*Id.*).   Plaintiff makes no mention in either of the provided grievances

of a June 26, 2015 visit with Dr. Litherland, and does not ever specifically allege in either of the grievances that it was Dr. Litherland who denied him pain medication.   To the extent Plaintiff alleges constitutional violations for injury to his jaw, obviously Plaintiff had notice of such an injury/grievance on the day the wound was made: June 18, 2016.

In sum, the undersigned finds Grievance 1517 untimely as to Dr. Litherland. Further, because the undersigned finds that the paper process was realistically open for Plaintiff's pursuit and because Plaintiff failed to take reasonable steps to timely file his grievance, the undersigned finds that the grievance process was available to him such that he had the opportunity to timely file Grievance 1517.   Therefore, Plaintiff was not thwarted in timely filing the grievance, and nor has he demonstrated good cause for excusing its tardiness.

III.   Plaintiff's Claim that He Should Be Excused from Filing Grievances Altogether

Citing to *Ford v. Page***, 169 F.Supp.2d 831 (N.D. Il. 2001)**, out of the Northern District of Illinois, Plaintiff argues that he should not have to file grievances at all regarding his dental issues since the administrative process could not provide him compensation.   (Doc. 27, p. 3).   *Ford* relied on language in the Seventh Circuit's opinion in *Perez v. Wisconsin Dept. of Corrections***.   See *Ford***, 169 F.Supp.2d at 837-838**.   In *Perez*, in regards to exhaustion of administrative remedies in prisoner suits, the Seventh Circuit noted that "[i]t is possible to imagine cases in which the harm is done and no further administrative action could supply any 'remedy'....[I]f the administrative process cannot provide compensation then there is no remedy to exhaust."   *Perez***, 182 F.3d at**

538. Plaintiff claims his situation which forms the basis for this lawsuit fits the *Perez/Ford* situation "to a tee".   (Doc. 27, p. 3).

However, the theory noted in *Perez* and *Ford* has been rejected by the Supreme Court.  ***See Booth v. Churner*, 532 U.S. 731, 736, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)**. As noted by Judge Herndon in this Court, in *Booth*, the Supreme Court "took a 'broader view of the utility of prison administrative processes,' requiring 'exhaustion of all administrative procedures that have 'authority to take some action in response to a complaint,' even if the procedure cannot provide the only relief that the prisoner is seeking, e.g., money damages." ***Randle v. Davidson*, No. 08-cv-856-DRH, 2010 WL 373887 at \*4 (S.D. Il. Sept. 10, 2010) (quoting *Larkin v. Galloway*, 266 F.3d 718, 723 (7th Cir. 2001)).**   In other words, a prisoner must exhaust his administrative remedies as long as there is *some* correctional action that could be taken.   ***Randle*, No. 08-cv-856-DRH, 2010 WL 373887 at \*4.**   Clearly, correctional action could have been taken by Menard staff regarding treating the open wound and pain in Plaintiff's gum. The fact that Plaintiff waited to file a grievance until over a month after the wound healed should not excuse him from exhausting the administrative remedies set forth by the State of Illinois.

## CONCLUSION

Since neither Grievance 1509 nor 1517 can exhaust Plaintiff's administrative remedies as to his claim against Dr. Litherland, the undersigned recommends that Defendant Litherland's Motion for Summary Judgment (Doc. 23) be **GRANTED** and

Defendant Litherland be **DISMISSED without prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1(b), the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals. ***See, e.g., Snyder v. Nolen***, **380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **August 8, 2016**.

**IT IS SO ORDERED**.
DATED:      7/21/2016

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge