IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES OWENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-1143-MJR-SCW |
| | ) |
| STEPHEN DUNCAN, | ) |
| DR. LITHERLAND, | ) |
| JEFFREY STRUBHART, | ) |
| COUNSELOR SCHOON, and | ) |
| C/O DUNLOP, | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff James Owens is currently incarcerated at the Lawrence Correctional Center in Sumner, Illinois. On November 16, 2015, he filed suit against a number of Lawrence officials, claiming that they violated his constitutional rights by not providing appropriate dental care during his tenure at the prison. Owens' complaint was screened pursuant to 28 U.S.C. § 1915A, and a number of his claims were allowed to proceed through threshold review. One of those claims was directed at Dr. Litherland, the dentist at Lawrence, who Owens says bungled a bone spur procedure on him on June 18, 2015, causing injury to Owens' jaw in the process. Dr. Litherland has now moved for summary judgment, maintaining that Owens' claims against him must be dismissed because he didn't properly exhaust his prison administrative remedies before suit. According to Dr. Litherland, Owens didn't submit his grievance concerning the bone spur procedure until August 21, 2015, and that was four days late under the

1

prison's rules. Owens concedes that his grievance was untimely but insists that the grievance process was unavailable to him from August 10, 2015 to August 17, 2015, as his housing unit was on lockdown and Lawrence officials refused his requests for grievance forms during that time. Alternatively, Owens claims that there was good cause for his late filing. The undersigned referred Dr. Litherland's motion to Magistrate Judge Williams, who has since filed a report advising that Dr. Litherland's exhaustion motion be granted. The propriety of that report is now before the Court for review.

Given Owens' response to Dr. Litherland's motion, Magistrate Judge Williams held an evidentiary hearing in July 2016 to flesh out the availability and timeliness points. Dr. Litherland called two witnesses at the hearing: Kimberly Ulrich, who was a paralegal in the law library in August 2015, and Jeffrey Strubhart, who was Lawrence's grievance officer during that same period. Ulrich testified that prisoners were allowed to obtain grievance forms during a lockdown: they could request forms from the wing officer, they could obtain them from the housing unit counselor, they could send the paralegal in the law library a request and the paralegal would mail them, or they could ask the paralegal for forms during her housing rounds and she would provide them then. Ulrich couldn't recall one way or the other whether Owens had requested grievance forms from her during the August 2015 lockdown. For his part, Strubhart confirmed that prisoners could obtain grievance forms from the law library, that they could obtain them from the back of their housing wing, or that they could ask an officer to obtain a grievance form from a counselor for the prisoner. Strubhart didn't testify one way or the other concerning the steps Owens took in August 2015 to file a form.

2

Owens also testified at the hearing. He stated that he typically kept extra grievance forms in his cell but had ran out by the time his housing unit was on lockdown in August 2015. He claimed he sent three requests to the law library for grievance forms so that he could file a grievance against Dr. Litherland—once on August 7th, once on August 11th, and once on August 14th—but that he never heard back from the law library and never received any forms. He also asked officers on his unit, but they wouldn't give him forms, either. Owens conceded that he didn't ask his counselor for a grievance form during the lockdown, but said that he didn't know he could. He also said that he never asked his counselor for forms during his sixteen-year tenure in the Department of Corrections—a curious statement given that Owens' counseling summary indicated that he had received forms from his counselor on at least six occasions during his lengthy incarceration. When lockdown ended on August 18th, Owens requested a library pass, and he was finally able to go to the library on August 21st. He obtained a grievance form from the library and filed a grievance against Dr. Litherland that day, which was ultimately denied on procedural grounds.

In light of the testimony at the hearing, Magistrate Judge Williams viewed Owens' failure to request a grievance form from his counselor as fatal, finding that the remedy process was still available to Owens while he was on lockdown because he could still have accessed forms through his counselor. For similar reasons, he also found that Owens' four-day delay in submitting his grievance couldn't be excused under the Illinois Administrative Code on good cause grounds, as Owens' failure to request a form from his counselor during lockdown indicated a lack of diligence on his

part.  Owens has filed objections to Judge Williams' recommended disposition, meaning that the undersigned must conduct an independent review of the evidence and arguments offered by the parties, without giving any presumptive weight to Judge Williams' conclusions.  *See Mendez v. Republic Bank*, **725 F.3d 651, 661 (7th Cir. 2013).**

The Court has reviewed the law on exhaustion and, especially in light of some recent authority decided after Dr. Litherland's motion was submitted, the Court can't agree with Judge Williams' recommendation in this case.  There are two problems with dismissing Owens' claim on exhaustion grounds.  The first concerns the availability of administrative remedies:  a prisoner must exhaust the administrative remedies set by prison rules before suing over prison conditions, but he need only exhaust those remedies that are "available" to him, and administrative remedies typically aren't available when an official refuses to provide a prisoner with the very forms he needs to start the grievance process.  *E.g.*, *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008);** *Dale v. Lappin*, **376 F.3d 652, 655-56 (7th Cir. 2004).**  In that vein, Owens offered evidence that he attempted to obtain forms from the law library and officers at the prison but was rebuffed, and that evidence, left undisputed by Dr. Litherland, would normally mean that Owens' administrative remedies should be regarded as exhausted.

The Court says "normally" because there are situations where the prison's administrative process might remain available to a prisoner despite one official's refusal to provide grievance forms.  The obvious example is when a prisoner fails to abide by a prison's rules for obtaining a form.  A prisoner has an obligation to follow a prison's procedures for grievances, *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002)**, so if

4

the rules compel the prisoner to obtain a grievance form from a corrections officer and he instead demands it from the prison's janitor, the janitor's refusal to provide the form won't preclude officials from asserting an exhaustion defense. *See Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011) (prisoner didn't exhaust merely by making informal complaints to someone at the prison, as he didn't abide by the prison's rule to file a formal grievance). The less obvious example is when a prison's rules are ambiguous as to where to obtain a grievance form. A plaintiff must do all he can to avail himself of the administrative process, *Wilder v. Sutton*, 310 F. App'x 10, 13 (7th Cir. 2009), so when a prison's rules are open-ended about the location of forms, it's incumbent on the prisoner to make a reasonable go at finding a form at the location envisioned by the rule. If a prisoner doesn't do that—if he asks one person for the form and that person declines but sends him to the right person to get it—he can't summarily deem his remedies exhausted. *Cf. Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (affirming exhaustion dismissal because prisoner only asked once for a grievance form).

Especially in light of recent Seventh Circuit authority, the undersigned can't conclude that this case involves either situation. The Illinois Department of Corrections' rules don't specify who provides grievance forms at a prison—the regulations only say that an offender should attempt to resolve incidents with his counselor first, and failing that he should file a grievance form, which "shall be made available in all living units." *See* ILL. ADMIN. CODE tit. 20, § 504.810; *see also Smith v. Buss*, 364 F. App'x 253, 255 (7th Cir. 2010) (Illinois grievance procedures required the prison "to maintain a supply of grievance forms in each unit and called for inmates

**to be given forms within one working day of a request").** There's nothing in the Illinois rule that directs a prisoner to obtain a form from his counselor, and the Seventh Circuit's recent decision in *Hill v. Snyder*, **817 F.3d 1037, 1041 (7th Cir. 2016)**, discourages this Court from imposing that kind of mandatory requirement when the prison's rules don't go that far. *Hill* involved an Indiana prisoner who claimed that his counselor failed to give him a grievance form—the prison officials claimed he hadn't exhausted because he didn't ask other officials at the prison for a form, but the Seventh Circuit rejected that argument, as the prison's rule only required the prisoner to go to two people for the form, and the prisoner made a reasonable effort at complying with the rule by asking both for a form. As was the case in *Hill*, Owens behaved in a manner contemplated by the Illinois rule, and he made a reasonable effort to secure forms in light of the open-ended language of that rule. Owens asked his unit officers for forms and sent three requests to the law library (whose paralegals sometimes visited the units to distribute forms), and those efforts appear reasonable in light of the officials' testimony that those paths were viable ways of obtaining grievance forms at Lawrence.

There's another basis for deeming Owens' administrative remedies exhausted in this case, one less to do with Illinois' rules or Owens' efforts to comply with those rules and more to do with a form of mousetrapping. If a prison provides direction to an inmate concerning the operation of the grievance procedure, the prison can't later argue failure to exhaust when the prisoner follows the directions laid out for him. *E.g., Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006)**; *Brown v. Croak*, **312 F.3d 109, 112 (3d Cir. 2002)**. At the evidentiary hearing, Owens testified that he routinely obtained grievance

6

forms by sending written requests to the law library, and the law library paralegal confirmed that this is a proper method for prisoners to obtain grievances. Because the undisputed testimony shows that Owens tried the library path but that his requests to the law library were ignored, his remedies must be regarded as exhausted.

Even if Owens' administrative remedies could somehow be regarded as available despite officials' failure to give him grievance forms, the undersigned is of the view that any untimely submission should be excused. The Illinois Administrative Code provides that untimely grievances can be excused if there was "good cause" for the delay, **ILL. ADMIN. CODE tit. 20, § 504.810(a)**, and the Seventh Circuit has applied a "flexible, equitable" test on that front. ***Pyles v. Nwaobasi*, — F.3d —, 2016 WL 3924376, at \*4-6 (7th Cir. 2016).** If a prisoner shows that he was "diligent," that he "followed the Illinois administrative procedures to the greatest extent possible," and that despite these efforts matters outside of his control caused a delay, he has established good cause. *Id.* Owens clears those requirements here: he asked for grievance forms in a manner contemplated by the Illinois administrative rules and confirmed as viable by prison officials; he had no control over prison officials' failure to provide those forms; and he obtained a form and filed a grievance shortly after he exited lockdown.

Judge Williams determined that Owens didn't have good cause for his late submission under the Illinois rule because he didn't ask his counselor for a grievance form while he was on lockdown. That recommendation was understandable at the time, as the Seventh Circuit's decision in *Hill* wasn't decided until after Dr. Litherland submitted his briefing on the motion for summary judgment and the Seventh Circuit's

7

decision in *Pyles* wasn't decided until after Judge Williams submitted his recommendation. With the benefit of those cases, though, the undersigned can't agree that Owens lacked good cause merely because he failed to ask his counselor for a grievance form. He wasn't necessarily required to go to his counselor for a form under the Seventh Circuit's thinking in *Hill*, and his efforts to obtain a form were consistent with the prison's rules and thus reasonable under the approach in *Pyles*.

One closing note is in order concerning a point Judge Williams flagged in his report and recommendation. At the hearing, Owens said that he didn't ask his counselor for a grievance because he didn't know that he could, and claimed that he had never received a grievance form through a counselor during his tenure with the Illinois Department of Corrections. That testimony was refuted by Owens' cumulative counseling summary, which showed that he had received counseling forms on at least six occasions from his counselor, the latest occurring in 2010. Judge Williams warned Owens of the consequences of lying to the Court in his report, and Owens shouldn't view anything in this order as contradicting that warning. In his objections, Owens says that he failed to remember those events due to memory loss and the passage of time. Whether that's true or not is beside the point for now—Owens is cautioned that he has a duty of candor to the Court, and if he makes a factual misrepresentation again, he may see sanctions, up to the dismissal of his case. **E.g., *Ayoubi v. Dart*, 640 F. App'x 524, 528-29 (7th Cir. 2016); *Hoskins v. Dart*, 633 F.3d 541, 543-44 (7th Cir. 2011).**

To sum up, because Owens' administrative remedies were rendered unavailable, and because he had good cause for his untimely grievance as to Dr. Litherland either

8

way, the Court must **REJECT** the July 2016 report and recommendation (Doc. 47) and **DENY** Dr. Litherland's motion for summary judgment (Doc. 23).

    **IT IS SO ORDERED.**

    DATED:  September 27, 2016

                                        /s/ **Michael J. Reagan**
                                        **Chief Judge Michael J. Reagan**
                                        **United States District Court**