IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES OWENS, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-1143-MJR-SCW |
| | ) |
| STEPHEN DUNCAN, | ) |
| DR. LITHERLAND, | ) |
| JEFFEREY STRUBHART, | ) |
| SCHOON, and | ) |
| C/O DUNLOP, | ) |
| | ) |
|       Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

**I.     INTRODUCTION**

Proceeding *pro se*, Plaintiff James Owens brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights. Plaintiff, an inmate incarcerated at Lawrence Correctional Center ("Lawrence") alleges that various defendants at Lawrence were deliberately indifferent to his serious medical needs. This matter is before the Court on a Motion for Summary Judgment (Doc. 39) filed by Defendants Dunlop, Schoon, Duncan, and Strubhart ("IDOC Defendants"). In their motion, the IDOC Defendants assert that they are entitled to summary judgment due to Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act. A previous summary judgment motion based upon failure to exhaust filed by Defendant Litherland, (Doc. 23), was denied. (Doc. 54). As to the IDOC

Defendants' motion, Plaintiff filed a response, and the matter is ripe for disposition. As more fully articulated below, the Court finds that Plaintiff failed to exhaust as to Defendant Dunlop but exhausted as to the remaining IDOC Defendants. Therefore, the IDOC Defendants' Motion (Doc. 39) is **GRANTED in part and DENIED in part**.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 2015, Plaintiff filed the present lawsuit against, among other individuals, the IDOC Defendants. (Doc. 1). Plaintiff's has pain in his jaw due to bone shards that were protruding from his gums. (Doc. 6, p. 3). Early on, Dr. Litherland treated Plaintiff's bone shards, but two months later in the beginning of June 2015, Plaintiff discovered another shard in his gums. *Id.* Plaintiff placed a sick call request for pain medication for the second bone shard, but he was informed over the PA system that his sick call was canceled. (Doc. 1, p. 4-5). Plaintiff informed Defendant Dunlop, a correctional officer, that it was recommended by healthcare personnel that Plaintiff obtain medication via sick call, but Defendant Dunlop refused to contact the healthcare unit or to otherwise help Plaintiff. (Doc. 6, p. 4).

On June 11, 2015, Plaintiff filed a grievance complaining, among other things, about his lack of treatment and pain medication for the bone shard, the cancellation of his sick call pass, and Defendant Dunlop's failure to assist him. (*See* Doc. 44, p. 7). The grievance was received by Defendant Schoon, Plaintiff's counselor, on June 17, 2015, and Schoon issued a response on June 23. *Id.* The response denied the grievance, and Plaintiff appealed to the grievance office. *Id.* at 7, 8. The grievance office received the

grievance on July 2, 2015, and Defendant Strubhart, the grievance officer, issued a response on August 24, 2015, concurring with Defendant Schoon. *Id.* at 8. The warden, who received the grievance on August 27, 2015, also concurred with the denial on the same day. *Id.* Plaintiff signed and dated his appeal of the grievance to the Administrative Review Board ("ARB") on September 4, 2015, and the ARB received it on September 10, 2015. *Id.* at 8, 9. Plaintiff filed this lawsuit on October 15, 2015 (Doc. 1). On February 10, 2016, the ARB denied his appeal. (Doc. 44, p. 9).

Defendant filed another grievance on August 21, 2015 ("August Grievance 1"). *Id.* at 10. Plaintiff grieved various issues relating to his bone shards in this grievance, including, again, not receiving pain medication. *Id.* Specifically, Plaintiff begins this grievance by stating:

> On 6-1-15 I had a bone spur come through my lower right gum at tooth socket # [illegible]....[O]n 6-2-15 I put in a request for dental care. On 6-4-15 I requested Sick Call for pain meds for the protruding bone spur. On 6-6-15 I put in another request for dental care. On 6-8-15 I put in another request for Sick Call for interim pain meds. On 6-10-15 I was seen at dental and the bone spur was removed but I was given no pain meds for the pain.

*Id.* Plaintiff goes on to complain about not receiving pain medication, and complains about "the dentist" and the dentist's actions at a visit. *Id.* at 10-11. No IDOC Defendants are specifically named in the grievance narrative. It is unnecessary to recite the procedural steps Plaintiff took in regards to this grievance, as this Court has already ruled that Plaintiff properly exhausted his claims against Defendant Litherland with respect to this August 21, 2015 grievance. (*See* Doc. 54).

3

There are six other grievances in the record before the Court, including four others dated August 21, 2015. (*See* Doc. 40-1, p. 15-26). Only one of the other grievances involves issues relating to Plaintiff's lawsuit ("August Grievance 2"). In that grievance, Plaintiff complains that his sick call passes had not been honored for eleven weeks, and he specifically mentions June incidents where his sick call passes were canceled. *Id.* at 19. Plaintiff does not mention any Defendants by name, and he does not discuss Defendant Dunlop's failure to contact the healthcare unit. *Id.* August Grievance 2 was submitted by Plaintiff on an emergency basis and was denied and determined to be a non-emergency by the warden on August 26, 2015. *Id.* August Grievance 1 and August Grievance 2 were appealed to the ARB. The ARB received the grievances on September 4, 2015, and denied them on September 14, 2015. *Id.* at 15.

Plaintiff's alleges two counts against the IDOC Defendants. First, Plaintiff claims that Defendant Dunlop violated Plaintiff's Eighth Amendment rights when he refused to seek assistance for Plaintiff after being informed that Plaintiff was instructed to obtain pain medication via sick call. (Doc. 6, p. 6). Second, he claims Defendants Schoon, Strubhart, and Duncan violated his Eighth Amendment rights when they failed to act on his grievances. *Id.*

III. **LEGAL STANDARDS**

    *a. Summary Judgment Standard*

A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine any contested issues regarding

exhaustion, and a judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Pavey*, **544 F.3d at 742.** Generally, the Court's role on summary judgment is not to evaluate the weight of the evidence, to judge witness credibility, or to determine the truth of the matter. Instead, the Court is to determine whether a genuine issue of triable fact exists. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**. In *Pavey*, however, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Here, the question of exhaustion is a purely legal question, and no hearing is required.

### b. PLRA's Exhaustion Requirement

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the Illinois Department of Corrections. *See Jones v. Bock*, **549 U.S. 199, 218 (2007).** To properly exhaust administrative remedies under the PLRA, a Plaintiff is required to comply with prison grievance procedures. *Id.* The PLRA provides that "no action shall be brought [under federal law] with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." **42 U.S.C. § 1997e(a)**. Under the PLRA, exhaustion of administrative remedies is mandatory, and unexhausted claims cannot be brought in court. *Jones*, **549**

**U.S. at 211.** The case may proceed on the merits only after any contested issue of exhaustion is resolved by the court. *Pavey*, **544 F.3d at 742.**

The Seventh Circuit takes a strict compliance approach to exhaustion by requiring inmates to follow all grievance rules established by the correctional authority. *Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006).** A prisoner must therefore "file complaints and appeals in the place, and at the time, the prison's rules require." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** The PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. § 1997e(a).** Where a prisoner fails to follow the proper procedure, however, the grievance will not be considered exhausted. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011).** The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006).**

Additionally, exhaustion is a precondition to filing suit; a prisoner may not file suit in anticipation that his administrative remedies will soon become exhausted. *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).** Rather, a prisoner must wait to bring a suit until after he completes the exhaustion process. *Perez v. Wisconsin Dept. of Corrections*, **182 F.3d 532, 535 (7th Cir. 1999) (citing 42 U.S.C. § 1997e(a))**. A suit that is filed prior to the exhaustion of remedies must be dismissed, even if a plaintiff's administrative remedies become exhausted during the pendency of the suit. *Id.*

### c. *Exhaustion Requirement under Illinois Law*

IDOC's process for exhausting administrative remedies is laid out in the Illinois Department of Corrections Grievance Procedures for Offenders. **20 Ill. Adm. Code § 504.810.** If unable to resolve dispute with a counselor, a prisoner may file a written grievance with a grievance officer within sixty (60) days of discovery of the dispute. *Id.* The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible." *Id.* The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer. **20 Ill. Adm. Code § 504.830(d)**. The prisoner will then have the opportunity to review the CAO's response. *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision. **20 Ill. Adm. Code § 504.850**. The ARB is required to make a final determination of the grievance within six months after receiving it. *Id.* Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO. **20 Ill. Adm. Code § 504.840**. The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender. *Id.* The request to

have a grievance handled on an emergency basis may also be appealed to the ARB. **20 Ill. Adm. Code § 504.850**.

IV. ANALYSIS

Plaintiff took the appropriate procedural steps to exhaust August Grievances 1 and 2. This Court previously ruled that Plaintiff did all he could to exhaust August Grievance 1 and that the grievance was exhausted as to Defendant Litherland. (*See* Doc. 54). August Grievance 2 was handled in the same manner. Like August Grievance 1, August Grievance 2 was sent on an emergency basis, was responded to by the CAO on the same day, and was received and responded by the ARB on the same dates. Therefore, for the reasons already stated by this Court regarding August Grievance 1 in its Order of September 27, 2016, the Court now finds Plaintiff exhausted the procedural steps required of him in as to August Grievance 2.

Plaintiff filed suit on October 15, 2015, well before the ARB responded on February 10, 2016, to the grievance he filed June 11, 2015. The June 11 grievance did not exhaust Plaintiff's administrative remedies. Plaintiff attempts to get around this fact by complaining that the grievance officer and warden did not respond quickly enough, arguing that the grievance process became unavailable to him on August 10, 2015. The Court does not buy Plaintiff's argument, and, regardless, even if the grievance officer and warden were inexcusably tardy in their responses, Plaintiff undertook an appeal after receiving their responses then filed suit well before the ARB's deadline to timely respond. Since Plaintiff undertook an appeal and filed suit while the appeal was still

8

pending, he did not exhaust the June 11, 2015 grievance. *See generally*, **Ford v. Johnson, 362 F.3d 395, 398 (7th Cir. 2004)(an inmate may not file suit during the time period allowed for the ARB to respond to a pending appeal)**.

None of the other grievances were specific enough to allow Plaintiff to exhaust as to Defendant Dunlop. IDOC's grievance procedure plainly states that an inmate's grievance "shall contain factual details regarding each aspect of the offender's complaint…[including] the name of each person who is the subject of or who is otherwise involved in the complaint." **Ill. Admin. Code § 504.810**. When the offender does not know the name of the individual, then he is required to "include as much descriptive information about the individual as possible." *Id.* In his grievances after June 11, 2015, Plaintiff did not comply with this aspect of the IDOC's grievance procedure because he failed to name Defendant Dunlop. Plaintiff knew the identity of the guard who refused to obtain assistance for him from the healthcare unit, because he named him as Dunlop in the June 11, 2015 grievance. In his grievances after June 11, 2015, by failing to name Defendant Dunlop, Plaintiff failed to comply with the plain requirements of the grievance procedure.

The Court is well aware of case law stating that "[g]rievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *See Glick v. Walker*, **385 Fed.Appx. 579, 582 (7th Cir. 2010) (citing *Jones*, 549 U.S. at 218)**. Nonetheless, neither August Grievance 1's nor August Grievance 2's content would put Lawrence administrators on notice that a

9

correctional officer had refused to seek assistance for Plaintiff from the healthcare unit. The only grievance discussing the specific incident with Defendant Dunlop is the June 11 grievance, but Plaintiff did not exhaust that grievance.

The Court is also cognizant of the fact that it recently denied summary judgment on exhaustion grounds in another one of Plaintiff Owens' (many) cases, and that the Court rejected an argument that summary judgment should be granted because two nurse defendants had not been named in Plaintiff's grievances. ***See Owens v. Duncan*, 15-cv-1169-MJR-SCW, (Doc. 70)(March 7, 2017)**. That ruling is distinguishable on two grounds, however. First, in 15-1169, Plaintiff did not know the names of the two nurse defendants until after he filed suit (15-1169, Doc. 57, p. 1), and, as a result, IDOC grievance procedures did not require him to list the nurses' names in his grievances. Second, Plaintiff's suit involved a continuing problem with the healthcare unit where he was not getting certain prescribed medication from them, and this Court held that, pursuant to *Turley v. Rednour*, 729 F.3d 645 (7th Cir. 2013), Plaintiff was not required to continually file grievances with each new instance of a continuing problem. (15-1169, Doc. 57). Here, however, Plaintiff did know the name of Defendant Dunlop, was required by the grievance procedures to name him, and did not other than in the June 11 grievance that was not exhausted. Further, Defendant Dunlop's alleged actions are not part of a continuing condition that would excuse Plaintiff from re-grieving, but, rather, constituted a single discrete incident. Though Plaintiff does allege a continuing condition of receiving treatment and medication from the healthcare unit, Dunlop's

10

alleged conduct is distinct from that ongoing condition. Though the allegations regarding the healthcare unit allege ongoing conditions stemming from the healthcare unit itself, and from the refusal of Schoon, Duncan, and Strubhart to do anything about this ongoing condition, the allegations against Defendant Dunlop involve a *single* incident of refusal to get Plaintiff *to* or *in touch with* the healthcare unit. Since Plaintiff failed to exhaust the only grievance which could place Lawrence officials on notice of this alleged single incident with Dunlop, summary judgment is proper as to Defendant Dunlop.

The two relevant August 21, 2015 grievances exhausted Plaintiff's claims as to Defendants Schoon, Duncan, and Strubhart. While these defendants are not mentioned by Plaintiff in his grievances, the nature of his claim against them renders the analysis different than when examining exhaustion as to the claim against Defendant Dunlop. The claim against Schoon, Duncan, and Strubhart is that they were deliberately indifferent to Plaintiff's issues after reviewing Plaintiff's grievances and doing nothing. August Grievances 1 and 2 put Lawrence officials on notice that Plaintiff was not receiving treatment and medicine from the healthcare unit for his issues with bone shards. Plaintiff's claim is that Schoon, Duncan, and Strubhart, who knew about Plaintiff's problem because they reviewed and responded to his grievances, did nothing about it. With Schoon, Duncan, and Strubhart responding to the grievances about Plaintiff's healthcare woes, it would be pointless to require Plaintiff to grieve, to those three defendants, that the three defendants themselves are doing nothing about

11

Plaintiff's problems. As previously mentioned, the purpose of the grievance process is to put the facility on notice of an inmate's problem. August Grievances 1 and 2, which Plaintiff exhausted, put the remaining IDOC defendants on notice of Plaintiff's problems with the healthcare unit and the same defendants certainly did not need to see another grievance to notify them that they themselves were not acting on Plaintiff's problems. Accordingly, summary judgment is not appropriate as to Defendants Schoon, Duncan, and Strubhart.

V. **CONCLUSION**

For the reasons articulated above, the IDOC Defendants' Motion for Summary Judgment (Doc. 39) is therefore **GRANTED in part and DENIED in part**. Plaintiff did not exhaust his administrative remedies as to Defendant Dunlop. Summary judgment is **GRANTED** as to him, and Defendant Dunlop is **DISMISSED without prejudice**. Plaintiff did, however, exhaust two grievances regarding his lack of treatment from the healthcare unit as to the remaining IDOC defendants. Plaintiff is deemed to have exhausted his administrative remedies as to Defendants Schoon, Duncan, and Strubhart, and summary judgment is **DENIED** as to them. Plaintiff's claims against Defendants Litherland, Duncan, Schoon, and Strubhart go forward.

**IT IS SO ORDERED**.

DATED: March 13, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**